IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KAREEM HASSAN MILHOUSE,**     :
:
    **Plaintiff**     :     CIVIL NO. 1:14-CV-1637
:
v.     :     **(Judge Rambo)**
:
**LT. S.I.S. SUSAN HEATH, et al.,**     :
:
    **Defendants**     :

## **M E M O R A N D U M**

### I. **Background**

On August 22, 2014, Plaintiff Kareem Hassan Milhouse, an inmate currently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"), filed a *pro se Bivens*[1] civil rights action pursuant to 28 U.S.C. § 1331. (Doc. 1.) Named as Defendants are Special Investigative Agent ("SIA") Heath and Senior Officer Erb, both prison officials from USP-Lewisburg. In the complaint, Plaintiff claims that, on August 12, 2014, these two Defendants violated his constitutional rights in connection with an incident in the basement of USP-Lewisburg's G-block. As relief, Plaintiff seeks compensatory and punitive damages.

Along with his complaint, Plaintiff has submitted a motion requesting leave to proceed *in forma pauperis*. (Doc. 5.) The BOP has filed responses to Plaintiff's

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

motion. (Docs. 10, 19, 33.) Plaintiff has replied, (Docs. 14, 15, 20, 21, 35, 38), and has filed supplements, (Docs. 15, 38). In addition, Plaintiff has filed a motion for leave to amend his complaint (Doc. 24), and a motion for a preliminary injunction (Doc. 27). For the reasons set forth below, Plaintiff's complaint (Doc. 1) will be dismissed without prejudice pursuant to the provisions of 28 U.S.C. § 1915(g). Further, Plaintiff's motion for leave to amend his complaint (Doc. 24), motion for a preliminary injunction (Doc. 27), and motions to add exhibits (Docs. 36 & 37) will be denied. Finally, the administrative order issued in this case (Doc. 8) will be rescinded.

**II.     Discussion**

The Prison Litigation Reform Act of 1996 ("PLRA"), in an effort to halt the filing of frivolous inmate litigation, enacted what is commonly referred to as the "three strikes" provision. Codified at 28 U.S.C. § 1915(g), the "three strikes" rule provides that an inmate who has had three prior actions or appeals dismissed as frivolous, malicious, or for failing to state a viable claim, may not proceed in a civil action *in forma pauperis* "unless the prisoner is in imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (en banc).

"[A] prisoner may invoke the 'imminent danger' exception only to seek relief from a danger which is 'imminent' at the time the complaint is filed." *Abdul-*

2

*Akbar*, 239 F.3d at 312. "'Imminent' dangers are those dangers which are about to occur at any moment or are impending." *Id*. at 315. "Someone whose danger has passed cannot reasonably be described as someone who 'is' in danger, nor can that past danger reasonably be described as 'imminent.'" *Id*. at 313. Moreover, "even if an alleged harm may in fact be 'impending,' it does not satisfy the exception if it does not threaten to cause 'serious physical injury.'" *Brown v. Lyons*, 977 F. Supp. 2d 475, 483 (E.D. Pa. 2013) (citing 28 U.S.C. § 1915(g)).

Dismissals of actions entered prior to the effective date of the PLRA are counted toward the "three strikes" referred to in 28 U.S.C. § 1915(g). *See Keener v. Pa. Bd. of Prob. & Parole*, 128 F.3d 143, 144-45 (3d Cir. 1997) (holding that dismissals based on frivolousness before 1996 "are included among the three that establish the threshold for requiring a prisoner to pay the full docket fees unless the prisoner can show s/he is 'under imminent danger of serious physical injury'"). The "three strikes" provision does not bar disqualified inmates from filing additional actions, but it does deny them the opportunity to proceed *in forma pauperis*, requiring inmates to pay the full filing fee prior to commencing suit.

Here, there is no question that Plaintiff has filed no less than four (4) civil actions or appeals in this court, the Eastern District of Pennsylvania, the Third Circuit Court of Appeals, and courts in other jurisdictions, since 1996. Many of these actions were dismissed on grounds that they were frivolous or failed to state a claim upon which relief may be granted. *See Milhouse v. Levi*, No. 07-4048 (3d

Cir. Mar. 26, 2008); *Milhouse v. Arbasak, et al.*, Nos. 09-2709 & 2858 (3d Cir. Apr. 28, 2010); *Milhouse v. Bledsoe, et al.*, Civ. No. 1:10-CV-0053 (M.D. Pa. Oct. 6, 2010); *Milhouse v. Levi*, Civ. No. 2:09-CV-5363 (E.D. Pa. Nov. 24, 2010); *Milhouse v. Jordan, et al.*, Civ. No. 1:09-CV-1365 (M.D. Pa. Feb. 14, 2011). In addition, Plaintiff does not dispute the fact that he has brought three or more actions or appeals in the federal courts that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. (*See* Doc. 5.) *See also Milhouse, v. Holt*, Civ. No. 1:12-CV-1286 (M.D. Pa. Aug. 1, 2012) (complaint dismissed without prejudice due to Plaintiff's three strikes); *Milhouse v. O'Brien*, Civ. No. 1:14-CV-0016 (N.D. W.V. May 9, 2014) (order adopting report and recommendation for dismissal of complaint without prejudice due to Plaintiff's three strikes); *Milhouse v. Mottern*, Civ. No. 1:14-CV-1013 (M.D. Pa. Aug. 4, 2014) (complaint dismissed without prejudice due to Plaintiff's three strikes); *Milhouse v. Sage*, Civ. No. 1:14-CV-1055 (M.D. Pa. Aug. 14, 2014) (same).

Turning to Plaintiff's present action, in his complaint Plaintiff alleges that on August 12, 2014, at approximately 8:25 a.m., Defendant Erb approached his cell and stated, "Get ready, your [sic] going to see the doctor." (Doc. 1 at 2.) However, when Defendant Erb returned to the cell at approximately 8:28 a.m., he took Plaintiff to the basement of G-Block rather than the doctor. (*Id.*) Plaintiff alleges that, with this action, Defendant Erb intentionally lied and placed Plaintiff's life in danger. (*Id.*)

4

That same day, at approximately 8:40 a.m., Defendant SIA Heath approached Plaintiff in the G-Block basement and stated, "I have information that you plan a future escape and [to kill] 3 guards." (*Id.*) Plaintiff replied, "This sound[s] like I need a lawyer." (*Id.*) Defendant SIA Heath then called Defendant Erb and directed him to open Plaintiff's cage. (*Id.*) After Plaintiff submitted to hand restraints, Defendant SIA Heath grabbed Plaintiff's neck and said, "You'll be long dead before any help arrive[s]. So you better not have any emergencies because C/O's will be slow to respond!" (*Id.*) Defendant SIA Heath then pushed Plaintiff into his cage and scratched him on his right side. (*Id.*) Plaintiff claims that Defendant SIA Heath later fabricated an incident report in connection with this episode. (*Id.*)

In his application to proceed *in forma pauperis*, Plaintiff has provided the following details as to why he is "under imminent danger of serious physical injury":

> On August 12, 2014, C/O Erb stated get ready your going to see the doctor. However C/O Erb knew that it was not the doctor but in fact Lt. Heath who assaulted and threatened Plaintiff because she believe that Plaintiff is plotting to escape and kill 3 guards.

(Doc. 5 at 2.)

The BOP's response to Plaintiff's allegation of imminent danger indicates that staff at USP-Lewisburg are familiar with Plaintiff, as he has been at the institution previously. (Doc. 10 at 2.) This court is also familiar with Plaintiff as

5

the court assigned to many of his multiple and various filings in the Middle District. *See supra*. Further, the BOP asserts that Plaintiff has a history of making allegations of assault by staff, but none of the resulting investigations have been sustained. (*See* Doc. 10 at 2-3.) More specifically, in a declaration made in support of the BOP's response to Plaintiff's allegations, SIA Fosnot declares that Plaintiff has made no effort to inform him of the allegations in this current civil action.[2] (Doc. 10-1, Ex. 1, Fosnot Decl., ¶ 4.) In his reply, Plaintiff counters that SIA Fosnot does not conduct rounds of his cellblock or respond to Plaintiff's cop-outs, none of which are attached to his reply. (Doc. 14 at 2; Doc. 15 at 4.) In addition, SIA Fosnot declares that, at the time of the filing of the complaint, Plaintiff was not in danger of harm from staff or other inmates based on the information he has provided. (Doc. 10-1 ¶ 5.) Plaintiff counters with a blanket allegation that there is a conspiracy at USP-Lewisburg to cover up staff misconduct. (Doc. 14 at 2.)

Turning to the BOP's responses to Plaintiff's allegations made in his complaint, first, the BOP notes that Plaintiff's statement that Defendant Erb told him that he was going to see a doctor on August 12, 2014 is correct. (Doc. 10 at 3.) According to the BOP, it is common practice to give an inmate this type of

---

[2] SIA Fosnot's duties include investigating allegations of staff misconduct. (Doc. 10-1, Ex. 1, ¶ 1.) As part of his duties and responsibilities, he has access to inmates' records, electronic data maintained on the BOP's SENTRY computer system, and BOP Program Statements. (*Id.*)

information at his cell in order to protect the inmate when he may be escorted from his cell to provide information to the Special Investigative Services ("SIS") or an SIA, as other inmates in the cellblock may overhear the conversation. (*Id.*)

Prior to Defendant Erb approaching Plaintiff at his cell that day, on July 19, 2014, staff found a document in another inmate's cell referencing plans for an escape attempt from USP-Lewisburg. (*Id.*) The plan was to effectuate an escape during a trip to an outside hospital and made reference to specific plans for killing staff during the trip. (*Id.* at 3-4.) The handwriting and nickname referenced in the signature on that document matched Plaintiff. (*Id.* at 4.)

As part of her investigation, Defendant SIA Heath interviewed Plaintiff on August 12, 2014. (*Id.*) In a declaration made in support of the BOP's response to Plaintiff's allegations, Defendant SIA Heath declares that she did not threaten, "scratch," or otherwise abuse Plaintiff during that interview. (*Id.*; Doc. 10-1, Ex. 3, Heath Decl., ¶ 3.) She states that Plaintiff admitted to writing the document at issue, and attempted to downplay the escape plan as well as the ability of the other inmate addressed in that document to actually assist in carrying out the escape attempt. (Doc. 10 at 4.) Plaintiff denies making such an admission. (Doc. 14 at 1-2.)

At the conclusion of her investigation, Defendant SIA Heath wrote a disciplinary incident report on Plaintiff for "Attempting to Kill Staff" and "Attempting to Escape from an Escorted Trip." (Doc. 10 at 4.) The incident report

7

is attached to Plaintiff's complaint.  (*See* Doc. 1 at 4.)  As stated above, Plaintiff alleges this incident report was fabricated.  (*Id*. at 2.)  Nevertheless, at Plaintiff's disciplinary hearing held on September 3, 2014, the Disciplinary Hearing Officer ("DHO") found Plaintiff had committed the prohibited acts of "Attempted Escape" and "Threatening Bodily Harm."  (Doc. 10 at 4.)

    As stated herein, Plaintiff has filed several supplemental replies to the BOP's responses.  In one such reply, Plaintiff concedes that he was sanctioned by a DHO for the misconduct alleged by Defendant SIA Heath, but complains that he is now in danger because that DHO sanction is in his prison file.  (Doc. 15 at 2-4.)  He also makes vague allegations as to later unspecified harassment, taunting, and assault.  (*Id*. at 3.)  He complains about his housing assignment in the Special Management Unit, and in an "amended motion pursuant to imminent danger," claims that BOP staff celled him with a violent inmate who subsequently assaulted him nearly three months after he filed this action.  (*Id*. at 3; Doc. 23.)  In addition, he alleges that staff have ignored his administrative remedy requests; his cell is excessively searched; his radio and legal mail have been destroyed; and a staff member slapped a cup off the food cart in his presence.  (Doc. 15 at 4-5.)  He also claims that, since the August 2014 incident, medical staff has not responded to his medical issues, including an injury to his eye on August 20, 2014.  (*Id*. at 3-4.)  This injury, however, is not related to the allegations in Plaintiff's complaint.

Reviewing the complaint, as well as Plaintiff's allegations in his *in forma pauperis* application and the BOP's responses and Plaintiff's replies thereto, the court finds that Plaintiff does not satisfy the imminent danger exception to the "three strikes" rule. Plaintiff's imminent danger allegation related to the complaint is based on verbal threats, a shove, a scratch to his right side, and a fabricated incident report stemming from a single past incident. None of these necessarily suggests a threat of future or "imminent" harm. *See Abdul-Akbar*, 239 F.3d at 315 n.1 (concluding that a single alleged past assault with pepper spray did not constitute imminent danger). Further, as demonstrated by his multiple replies and supplements to his imminent danger allegation related to his complaint, Plaintiff is now attempting to use subsequent unrelated incidents, such as an assault by a cellmate or other later allegations related to his conditions of confinement, to establish imminent harm. Rather, because Plaintiff has failed to provide any support for his allegations that he was in imminent danger when he filed his complaint, he may not proceed in this action without prepayment of fees under § 1915(g). Thus, Plaintiff is not entitled to proceed *in forma pauperis* and this action will be dismissed without prejudice pursuant to § 1915(g).[3]

An appropriate order will issue.

---

[3] In light of the court's decision here, Plaintiff's motion for leave to file an amended complaint (Doc. 24) will be denied. Further, Plaintiff's motion for a preliminary injunction (Doc. 27), and motions to add exhibits (Docs. 36 & 37) will be denied.

                                         s/Sylvia H. Rambo
                                        United States District Judge

Dated:  May 4, 2015.